**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Secretary of Labor, United States Department of Labor, | No. CV-18-04756-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Valley Wide Plastering Construction Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor's ("Plaintiff") Motion for a Preliminary Injunction to Restrain Violations of the Fair Labor Standards Act (Doc. 79) and Motion for a Protective Order, (Doc. 87). For the following reasons, the Motion for a Protective Order is granted and the Motion for a Preliminary Injunction is granted in part and denied in part.

## BACKGROUND

This case arises out of Defendants Valley Wide Plastering Construction Incorporated ("Valley Wide"), Jesus Guerrero, Rose Guerrero, and Jessie Guerrero, Jr.'s (collectively, "Defendants") alleged violations of the Fair Labor Standards Act ("FLSA"). Defendants operate Valley Wide, a construction company that provides plastering and stucco services. In 2012 and 2017, the Wage and Hour Division ("WHD") of the United States Department of Labor ("DOL") investigated Defendants' compliance with the FLSA. After WHD's second investigation, Plaintiff brought this lawsuit on December 18, 2018.

1    The Complaint alleges that Defendants have violated and continue to violate the FLSA by
2    failing to pay overtime premiums, refusing to properly maintain records, and interfering
3    with FLSA rights.
4        Since the beginning of this lawsuit, Plaintiff alleges that Defendants continue to
5    engage in conduct that violates the FLSA.  Accordingly, on October 16, 2020, Plaintiff
6    filed a Motion for Preliminary Injunction to enjoin Defendants to keep accurate records
7    and pay overtime premiums as required by the FLSA.  In addition, Plaintiff filed a Motion
8    for Protective Order on October 23, 2020 to protect the identities of his informants.

**DISCUSSION**

9

10   **I.   Protective Order**

11        **a.  Legal Standard**

12       The Federal Rules of Civil Procedure provide that upon a showing of "good cause,"
13   the Court may issue a protective order "forbidding inquiry into certain matters."  Fed. R.
14   Civ. P. 26(c)(1)(D).  The party seeking a protective order "bears the burden of showing . . .
15   that specific prejudice or harm will result if no protective order is granted."  *Foltz v. State*
16   *Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).  "Rule 26(c) confers broad
17   discretion on the trial court to decide when a protective order is appropriate and what
18   degree of protection is required."  *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984).

19        **b.  Analysis**

20       The informant privilege is "the Government's privilege to withhold from disclosure
21   the identity of persons who furnish information of violations of law to officers charged
22   with enforcement of that law."  *Roviaro v. United States*, 353 U.S. 53, 59 (1957).  The
23   privilege is an important tool for protecting "the public interest in effective law
24   enforcement."  *Id.*  In FLSA actions, "[i]nformants are an important lot" and offering
25   informants the protection of the informant privilege gives the DOL a "better chance of
26   candid dialog" and provides "a particularly effective means of preventing retaliation."  *In*
27   *re Perez*, 749 F.3d 849, 856 (9th Cir. 2014).  Thus, the informant privilege is often
28   successfully invoked in FLSA cases.  *See, e.g.*, *id.* at 855–860; *Brock v. Gingerbread*

*House, Inc.*, 907 F.2d 115, 116–17 (10th Cir. 1989); *Brennan v. Engineered Prods., Inc.*, 506 F.2d 299, 302–05 (8th Cir. 1974); *Hodgson v. Charles Martin Inspectors of Petrol., Inc.*, 459 F.2d 303 (5th Cir. 1972).  In invoking the privilege, the DOL is not required to make a threshold showing that retaliation is likely because "of the significant policy consideration behind the privilege, as well as the difficulty of such proof."  *Dole v. Local 1942, Intern. Broth. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989).

The privilege gives way, however, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  *Roviaro*, 353 U.S. at 60–61.  "[T]he party seeking disclosure has the burden of showing that its need for the information outweighs the government's interest in nondisclosure."  *In re Perez*, 749 F.3d at 858.  The balancing of these interests is within the Court's discretion, "after taking into consideration 'the particular circumstances of each case.'"  *Id.* (quoting *Roviaro*, 353 U.S. at 62).

For his preliminary calculation of back wages owed to all Valley Wide employees, Plaintiff relies, in part, on approximately 85 employee interviews conducted during the WHD's investigation.  Plaintiff's reliance on a smaller subset of employees to calculate back wages is pursuant to *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).  The *Mt. Clemens Pottery* standard "allows district courts to award back wages under the FLSA to non-testifying employees based upon the fairly representative testimony of other employees."  *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988).  Plaintiff produced notes taken during these interviews but redacted information relating to the informants' identities.

Defendants have not shown a compelling reason for disclosure of the informants' identities at this stage in the litigation.  Defendants contend that they are unable to rebut the informants' statements without their identities, but Defendants have access to their own records which they can use to dispute that their employees worked for unpaid overtime hours.  *See, e.g.*, *Brennan*, 506 F.2d at 303 (denying disclosure where the contested issues were "peculiarly within the defendant's own knowledge" and where the "primary use of

1   the requested statements would be for impeachment purposes").  Furthermore, Plaintiff has
2   already identified four informants, whom Defendants are free to depose, and provided the
3   redacted interview notes.

4       Nor is Defendants' assertion that they require the informants' identities to establish
5   that Plaintiff's sample is unrepresentative compelling.  Plaintiff asserts that he will not use
6   the interview notes at trial but will instead use testimony from witnesses he has not selected
7   yet.  (Doc. 87–1 at 11.)  As many of the informants' statements may not factor into
8   Plaintiff's final back wages calculation, requiring the disclosure of all 85 identities
9   unnecessarily places those informants at risk of retaliation.  Accordingly, Plaintiff is not
10  required to disclose the informants' identities at this stage.

11      Plaintiff will be required, and has already agreed to, disclose the identities of the
12  informants who are selected to testify and produce their unredacted witness statements.
13  *See, e.g.*, *Perez v. Guardian Roofing LLC*, No. 3:15-cv-05623-RJB, 2016 WL 1408027, at
14  *3 (W.D. Wash. Apr. 11, 2016) (allowing disclosure of identities at the pretrial conference
15  but not during discovery).  The Court orders that Plaintiff reveal the identities of the
16  informants testifying at trial and their unredacted witness statements by April 2, 2021.
17  Upon disclosure, Defendants have sixty days to depose and propound written discovery on
18  these testifying informants only.

19  **II.    Preliminary Injunction**
20          **a.  Legal Standard**

21      A preliminary injunction is "an extraordinary and drastic remedy, one that should
22  not be granted unless the movant, by a clear showing, carries the burden of persuasion."
23  *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).  A plaintiff seeking a preliminary
24  injunction must show that (1) it is likely to succeed on the merits; (2) it is likely to suffer
25  irreparable harm without an injunction; (3) the balance of equities tips in its favor; and
26  (4) an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.
27  7, 20 (2008).  "A preliminary injunction may also be appropriate if a movant raises 'serious
28  questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as

long as the second and third *Winter* factors are satisfied." *Disney Enter., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

    **b. Analysis**

        **1. Likelihood of Success on the Merits**

29 U.S.C. § 211(c) requires employers to "make, keep, and preserve such records of the persons employed by [them] and of the wages, hours, and other conditions and practices of employment maintained by [them]." Specifically, employers must maintain and preserve records that contain the "[h]ours worked each workday and total hours worked for each workweek[,]" "[t]otal wages paid each pay period[,]" and the "[r]egular hourly rate of pay for any workweek in which overtime compensation is due." 29 C.F.R. § 516.2(a). The FLSA also prohibits employers from maintaining records known to be "false in a material respect." 29 U.S.C. § 215(a)(5). Additionally, employers must maintain for at least two years "all basic time and earning cards or sheets on which are entered the daily starting and stopping time of individual employees." 29 C.F.R. § 516.6(a)(1).

The Court finds that Plaintiff is likely to prevail on his recordkeeping claim. Plaintiff produced substantial evidence, in the form of declarations and documentary evidence, that Defendants, both before and during this litigation, have inaccurately recorded their employee work hours by filling in false hours or by manually altering the number of hours employees record without adequate justification. (Docs. 79–2, 3, 4, 5, 6, 7, 8, 9, 10.) Plaintiff's evidence also shows that Defendants have, at certain times, failed to maintain daily time records for the requisite period and have failed to accurately record wages paid to their employees by issuing checks from non-payroll accounts. (Doc. 79–2 ¶¶ 9–10, 15, 40–51.) Additionally, Plaintiff's evidence indicates Defendants reduce the regular rates of their employees to make it appear as if overtime is paid when it is not. (Doc. 79–5.)

Defendants do little to rebut Plaintiff's substantial showing. Defendants provide the declaration of Defendant Jessie Guerrero, Jr., who generally denies wrongdoing. (Doc.

95-1.)  Mr. Guerrero, Jr. does provide an explanation for why time records in Exhibit 3 to the Declaration of Charmaine Zahler (Doc. 79-3) were altered but does not specifically address any of the other declarations or evidence submitted by Plaintiff.  Nor do Defendants produce any other declarations to rebut Plaintiff's showing of inaccurate records.  Instead, Defendants primarily rely on general denials of wrongdoing and the argument that this is a factual dispute.  In light of Plaintiff's substantial showing and Defendants' insufficient rebuttal, the Court finds that Plaintiff is likely to succeed on the merits of his recordkeeping claim.

As overtime is a product of recordkeeping and the relief Plaintiff seeks pertains to keeping records, the Court enters relief based on Plaintiff's recordkeeping claim, not the overtime claim.  Accordingly, in issuing this preliminary injunction, the Court does not make a finding on whether Plaintiff is likely to succeed on the merits of his overtime claim.

## 2.  Likelihood of Irreparable Harm

"[I]n a case involving statutory enforcement, where the applicable statute authorizes injunctive relief, the traditional irreparable injury showing is not required."  *F.T.C. v. Consumer Def., LLC*, 926 F.3d 1208, 1214 (9th Cir. 2019); *See also United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987).  Here, 29 U.S.C. § 217 provides that "district courts . . . shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title."  Accordingly, the Court presumes the existence of irreparable injury.

## 3.  Balance of Equities and Public Interest

The balance of equities and public interest favor Plaintiff.  Without a preliminary injunction, it will be difficult for Plaintiff to properly discern the correct amount of wages earned.  Additionally, a preliminary injunction is in the public interest because enforcing compliance with the FLSA helps eliminate "labor conditions detrimental to the maintenance of the minimum standard of living" of workers.  29 U.S.C. § 202(a).

On the other hand, Defendants do not have a legitimate interest in violating the FLSA.  Furthermore, Defendants do not explain why Plaintiff's requested relief is unduly

burdensome to implement.  Accordingly, these factors weigh in favor of Plaintiff.

### 4.  Proposed Relief

Plaintiff has requested a number of provisions to include in the preliminary injunction that he argues are necessary to ensure that Defendants comply with the FLSA's recordkeeping requirements.  The Court only adopts those provisions that are reasonably necessary to achieve these goals at this stage.  Plaintiff's requested relief, with the Court's modifications, is listed at the end of the Order.

### 5.  Scope of the Injunction

Plaintiffs face a heightened burden when they seek a mandatory preliminary injunction.  A prohibitory injunction prohibits a party from taking action and "preserve[s] the status quo" while a mandatory injunction orders a party to take action and goes beyond maintaining the status quo.  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009).  Mandatory injunctions are not granted unless "extreme or very serious damage will result" and are not granted in "doubtful" cases or where the injury is compensable in damages.  *Id.* at 879.  "The rules governing the relief that may be granted by preliminary injunction are not 'hard and fast rules, to be rigidly applied to every case regardless of its peculiar facts,' because '[t]he infinite variety of situations . . . requires that the court have considerable discretion in fashioning such relief.'"  *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

Contrary to the Defendants' assertion, Plaintiff's relief, adopted as modified below, is not primarily mandatory.  Requiring the Defendants to abide by the FLSA's recordkeeping rules is prohibitory.  *See, e.g.*, *id.* at 998 (discussing how requiring the government to conduct future bond hearings according to constitutional procedures is prohibitory).

Although certain provisions of Plaintiff's relief may be mandatory in nature, those provisions meet the heightened standard.  A continuing failure to maintain accurate records, which greatly interferes with the DOL and employees' ability to determine the

1   extent of wages owed, constitutes serious damage.  The merits of this case are also not

2   doubtful—as explained above, Plaintiff has presented substantial evidence of

3   recordkeeping violations with little rebuttal from the Defendants.    Furthermore,

4   "[m]andatory injunctions are most likely to be appropriate when 'the status quo . . . is

5   exactly what will inflict the irreparable injury upon complainant.'"  *Id.* at 999 (quoting

6   *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C.

7   Cir. 1984)).  The provisions of Plaintiff's relief that are mandatory in nature are mild

8   measures and are there to ensure that Defendants abide by the FLSA.  Accordingly, the

9   Court finds that Plaintiff meets his burden for his requested relief.

10          **6.  Security**

11          A court may issue a preliminary injunction "only if the movant gives security in an

12   amount that the court considers proper to pay the costs and damages sustained by any party

13   found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  Although

14   the plain language of the rule suggests that a bond is mandatory, the Ninth Circuit has held

15   that it "invests the district court with discretion as to the amount of security required, *if*

16   *any*."  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).  A district court need

17   not require bond "when it concludes there is no realistic likelihood of harm to the defendant

18   from enjoining his or her conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir.

19   2003).  As the likelihood of harm to Defendants for complying with the FLSA and

20   cooperating with the government is low and Defendants have not requested a bond, the

21   Court will waive the bond requirement.

22                              **CONCLUSION**

23          For the reasons described above, Plaintiff is not required to disclose his informants'

24   identities at this stage in the litigation.  Additionally, Plaintiff's Motion for a Preliminary

25   Injunction is granted in part and denied in part.  Accordingly,

26          **IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Protective Order

27   (Doc. 87) is **GRANTED.**

28          **IT IS FURTHER ORDERED** that Plaintiff reveal the identities of his informants

testifying at trial and their unredacted witness statements by **April 2, 2021**.   Upon disclosure, Defendants have sixty days to depose and propound written discovery on these testifying informants only.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Preliminary Injunction to Restrain Violations of the FLSA (Doc. 79) is **GRANTED** in part and **DENIED** in part as follows:

1. Plaintiff's motion for a preliminary injunction on his overtime claim is denied.
2. Plaintiff's motion for a preliminary injunction on his recordkeeping claim is granted.  Plaintiff's requested relief is granted as modified below:

The Court enjoins Defendants, including their agents, family members, attorneys, supervisors, managers, co-employers, employees, successors, or officers, owners, or directors, and all those in active concert or participation with Defendants as follows:

1. Defendants are enjoined from maintaining false records of any of the information in records they are required to keep by law.
2. Defendants shall implement a reliable timekeeping system for each employee to record his or her own daily start and stop times that employees may use to clock in at the start of the work day and out at the end of the work day.  Defendants shall provide the Secretary with access to the raw data and records of this time-keeping system and a record reflecting if and when any changes were made to this data.
3. Defendants shall maintain accurate and complete records of all wages paid to each of their employees each pay period, including gross wages, deductions, and net pay.  Defendants are enjoined from paying wages to any employees through non-payroll accounts.
4. Defendants are enjoined from listing false regular rates on payroll records.
5. Defendants shall distribute a copy of Exhibit A-Notice (Doc. 79-11) in Spanish and English to each of their current employees each time they are paid by attaching a copy of such notice to the employees' paycheck. Defendants shall

also mail a copy of this Notice in Spanish and English to all current employees, and they shall also post the Notice in Spanish and English in a prominent location in the company yard and office in Phoenix and Tucson.

6. Defendants shall provide the Secretary with access to all time and payroll records each pay period as they are completed.

7. Defendants shall produce to the Secretary a list of all current employees with their current contact information within 15 days of the date of this Order and every 30 days from that date thereafter.

**IT IS FURTHER ORDERED** that the Court exercises its discretion and waives the requirement of a security bond accompanying this preliminary injunction.

Dated this 5th day of February, 2021.

G. Murray Snow
Chief United States District Judge