**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>Valley Wide Plastering Construction Incorporated, et al.,<br><br>Defendants. | No. CV-18-04756-PHX-GMS<br><br>**ORDER** |

Pending before the Court are the Secretary of Labor's ("Plaintiff") Motion for Leave to Amend Exhibit A (Third Request) (Doc. 219), Motion to Modify the Scheduling Order to Allow the Secretary to Revise Damages Computations (Second Request) (Doc. 222), and Application for Attorneys' Fees and Investigative Costs (Doc. 246). For the reasons below, Plaintiff's Motion for Leave to Amend is granted, Plaintiff's Motion to Modify is denied, and Plaintiff's Application for Fees is granted in part and denied in part.

**BACKGROUND**

Plaintiff filed suit against Valley Wide Plastering Construction Inc., Jesus and Rose Guerrero, and Jesse Guerrero, Jr. ("Defendants") on December 18, 2018. (Doc 1.) Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") by regularly depriving employees of overtime pay. On May 24, 2019, the Court set the initial scheduling order in this matter. (Doc. 22.) On October 7, 2020, the Court amended the May 24, 2019 Case Management Order, (Doc. 22), by extending the deadline for the final

supplementation of Mandatory Initial Discovery Pilot ("MIDP") responses and completion of fact discovery to December 4, 2020, (Doc. 72). On that date, Defendants had not adequately responded to two outstanding requests for production ("RFPs"). (Doc. 105 at 5–6.) The Court therefore granted an extension of fact discovery until March 5, 2021, so that Defendants could respond to the outstanding RFPs, and Plaintiff could serve a MIDP supplement as to only the newly produced information. (Doc. 117.) That deadline was again extended three more times because of Defendants' dilatory production. (Docs. 129, 171); (Doc. 145 at 39.) Defendants finally produced the documents in August 2021. Plaintiff now moves to amend Exhibit A to the Complaint and to revise his damages methodology in light of the newly produced evidence.

Separately, Plaintiff also seeks an award of attorneys' fees and investigative costs. The Court issued a preliminary injunction in this case on February 5, 2021. (Doc. 123.) On May 5, 2022, the Court found Defendants in contempt of that preliminary injunction. (Doc. 242.) In so finding, the Court imposed a remedial sanction against Defendants for Plaintiff to recover fees incurred because of Defendants' contempt. The sanction also awarded Plaintiff investigative costs for his time spent surveilling Valley Wide jobsites on Saturdays and reviewing employee timesheets to identify violations of the preliminary injunction. (Doc. 242 at 22.) The only question remaining, therefore, is the amount of fees to be awarded.

## DISCUSSION

Plaintiff requests leave to amend Exhibit A to the Complaint and for leave to revise his damages methodology based on newly produced evidence. He also seeks an award of attorneys' fees and investigative costs. The Court considers each Motion in turn.

**I. Motion to Modify Scheduling Order for Leave to Amend Exhibit A**

Plaintiff first requests that the Court modify the scheduling order and grant him leave to amend Exhibit A. (Doc. 219.) Exhibit A lists the names of employees for which Plaintiff seeks backpay and liquidated damages. (Doc. 1 at 9.) "When a party moves to amend the pleadings after the expiration of the deadline to do so established in the

scheduling order, courts review the motion through a two-step process." *Steward v. CMRE Fin. Servs., Inc.*, No. 215CV00408JADNJK, 2015 WL 6123202, at *1 (D. Nev. Oct. 16, 2015). First, the Court must consider the Motion under Federal Rule of Civil Procedure 16(b)'s good cause standard to amend the scheduling order. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Second, the Court must examine whether amendment is proper under Rule 15(a). *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999); *see also Johnson*, 975 F.2d at 608.

### A. Good Cause

Where a scheduling order is in place, Rule 16(b) of the Federal Rules of Civil Procedure controls. *Johnson*, 975 F.2d at 607–08. Rule 16(b)(4) states that a "schedule may be modified only for good cause and with the judge's consent." *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. . . . If [the party seeking to amend] was not diligent, the inquiry should end." *Id.*

Defendants made three separate productions of documents that revealed names relevant to Plaintiff's Exhibit A. Because Defendants did not produce the documents electronically, there was a delay between when Defendants made the documents available and when Plaintiff actually inspected and photographed them. Defendants' first relevant production was made on February 21, 2020, making over 50,000 pages of documents covering June through December 2019 available for inspection. (Doc. 219-1 at 2.) Plaintiff believed this production to be deficient and began a meet-and-confer process with Defendants to supplement their production. (Doc. 219-1 at 2–3.) On October 28, 2020, Defendants made their second relevant production, which made 20,000 pages of documents covering December 2019 through October 2020 available for inspection. Plaintiff

photographed these documents on November 4 and 18, 2020. (Doc. 219-1 at 3.) Finally, Defendants made their third relevant production on March 10, 2021, which made 5,000 pages of documents covering the rest of 2020 available for inspection. Plaintiff photographed these documents on March 31 and April 1, 2021. (Doc. 291-1 at 3.) Plaintiff filed his Motion for Leave to Amend Exhibit A (Doc. 169) on August 4, 2021, before receiving complete responses to the outstanding RFPs.[1]

Although the Court recognizes that Plaintiff delayed a year and half between when he was first alerted to the need to amend Exhibit A—in February 2020—and when the Motion was filed—in August 2021—the Court does not find the delay dispositive in these circumstances. Much of the delay can be explained by the volume of documents, which totaled many thousands of pages, that had to be produced, photographed, and reviewed. The delay can also be attributed to Defendants' allegedly deficient productions, which caused numerous discovery disputes and further delayed discovery. (Docs. 64, 68, 106, 129, 145, 171.) The rest of the delay is explained by the fact that discovery remained open until December 4, 2020. (Doc. 71.) As represented by Defendants in both the Joint Case Management Report and at the Case Management Conference,[2] the parties contemplated that Plaintiff could seek amendment after the deadline to amend, as opposed to leaving the deadline open indefinitely. (Doc. 20 at 4.) Plaintiff, therefore, was entitled to use documents relevant through the close of fact discovery in amending Exhibit A, so long as he did so in compliance with the Federal Rules of Civil Procedure. Had Plaintiff made a Motion in February 2020—after a production that he believed to be deficient—Plaintiff would have had to make an additional Motion by the time discovery closed, and two others

---

[1] The Court denied the Motion as moot because Plaintiff had not yet reviewed Defendants' full production. (Doc. 199.)

[2] At the Case Management Conference, Plaintiff requested that the deadline to amend the pleadings remain open until the close of fact discovery because, in order for him to recover liquidated damages for Defendants' employees, he had to name them in the Complaint. He therefore expected an ongoing need to amend the Complaint as discovery progressed. In response, defense counsel requested "that the Department of Labor be required to seek leave of Court to add additional employees to the extent they feel they need to." In reliance on that representation, Plaintiff agreed to, and the Court accepted, an earlier deadline to amend the pleadings.

by the time Defendants finished producing documents in August 2021. This unnecessary motion practice would have been a drain on the parties and judicial resources; under these circumstances, Plaintiff's delay is not attributable to lack of diligence but rather to ensuring that one Motion included all needed changes.[3] The Court thus finds sufficient good cause to modify the scheduling order.

### B. Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given when "justice so requires." Fed. R. Civ. P. 15(a). "But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Leave to amend lies within "the sound discretion of the trial court"; however, this Circuit has instructed that Rule 15's policy favoring amendment "should be applied with extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987). The party opposing amendment bears the burden of establishing futility or one of the other permissible reasons for denying a motion to amend. *Angel Jet Servs., L.L.C. v. Raytheon Health Benefits Plan*, No. 2:10-CV-01385-PHX-JAT, 2011 WL 744917, at *2 (D. Ariz. Feb. 25, 2011).

Allowing amendment will not prejudice Defendants nor cause undue delay. Plaintiff's Complaint seeks relief under two separate provisions of the FLSA: 29 U.S.C. § 216(c) and § 217.[4] (Doc. 1 at 2–3.) Section 217 allows the Court to "restrain[] . . . any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees." Section 216(c), on the other hand, allows the Court to award unpaid compensation, including overtime compensation, as well as "an equal amount as

---

[3] This conclusion is bolstered by the fact that Defendants' late production in August 2021 required the filing of yet another Motion for Leave to Amend, which mooted the previous one. (Doc. 199 at 7.) Moreover, to the extent Defendants argue that Plaintiff was not diligent in the filing of *this* Motion, their argument is not well taken. The Court did not decide the August Motion until February 17, 2022, and Plaintiff filed the present Motion on April 6. Any delay can be attributed to the extensive briefing and evidentiary hearing on Plaintiff's Motion for Civil Contempt Sanctions (Doc. 187).

[4] Some cases refer to the relevant provisions of the FLSA, which are § 16(c) and § 17 respectively.

- 5 -

liquidated damages." Unlike § 216, which requires that employees be named in the Complaint (or an equivalent pleading), § 217 does not require that employees be so named. *E.g.*, *Donovan v. Crisotomo*, 689 F.2d 869, 875 (9th Cir. 1982); *Hugler v. Kazu Constr., LLC*, 262 F. Supp. 3d 1032, 1042 (D. Haw. 2017); *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1203–04 (5th Cir. 1981). Even if the Court denied Plaintiff's Motion, Plaintiff could still seek relief for these same employees under § 217; the only difference would be that Plaintiff could not recover the liquidated damages "in an equal amount" pursuant to § 216 as to employees whose claims fell outside the statute of limitations. No delay will therefore result, discovery will not need to be reopened, and Defendants will not be prejudiced.[5] To the extent Defendants are concerned that Plaintiff would use these newly named employees to support his case at trial, the Court will not permit him to do so unless Plaintiff has complied with all discovery requirements, including the MIDP. *Sec'y of Labor v. Valley Wide Plastering Constr. Inc.*, No. CV-18-04756-PHX-GMS, 2022 WL 489741 (D. Ariz. Feb. 17, 2022). Plaintiff's Motion is granted.

**II. Motion to Modify the Scheduling Order to Revise Damages Computations**

Plaintiff next asks that the Court modify the scheduling order to permit Plaintiff to disclose a revised damages methodology pursuant to the MIDP. (Doc. 222.) Plaintiff has twice requested to update his methodology, both of which were denied. (Docs. 171, 199.) The Court did, however, allow Plaintiff to file a third Motion based on Defendants' late production of documents in response to RFPs 23 and 24. (Doc. 199.) These documents were not produced until August 2021, over eight months after discovery had closed and the deadline for MIDP supplementation had passed. (Doc. 199 at 6–7.) The pertinent question, therefore, is whether the late-produced documents justify allowing Plaintiff to update the methodology for reasons separate from what was previously presented to—and rejected by—the Court.

Plaintiff's original proposed methodology ("Original Methodology") used information obtained from Valley Wide employees and Defendants' records to determine

---

[5] For the same reason, the Court does not find Plaintiff's Motion to have been brought in bad faith or that it is futile.

- 6 -

how many hours Valley Wide employees usually worked in a week. (Doc. 222-2 at 10); (Doc. 239-3 at 8.) Plaintiff then calculated the gross wages paid to workers to determine average weekly earnings. (Doc. 222-2 at 10); (Doc. 239-3 at 8.) The average weekly earnings were then divided by the average hours to yield a "reconstructed regular rate" by which the overtime premium could be properly calculated. (Doc. 222-2 at 10); (Doc. 239-3 at 9.) This methodology necessarily relied on the records of hours worked and wages paid to be both documented and accurate. As already presented in prior Motions, however, Plaintiff became aware of many inaccuracies in Defendants' records and thus could not rely on them to the extent required by the Original Methodology. (Docs. 166, 177.)

After the deadline for MIDP supplementation, Plaintiff disclosed a new methodology for his back wage calculation. This new methodology ("First Revised Methodology") relied less on Defendants' records and used representative employee testimony to reconstruct an average amount of weekly overtime hours for specific groups of employees (namely, piece-rate and hourly workers). (Doc. 149-1 at 17–19.) To calculate the overtime premium on those hours, Plaintiff abandoned his reconstructed regular rate in favor of using the Arizona minimum wage and data from the Bureau of Labor Statistics for workers in the industry. (Doc. 149-1 at 17–19.) The resulting overtime premium would then be awarded for the average number of weeks annually worked by employees, or about fifty weeks. (Doc. 149-1 at 17–19.) The Court did not permit Plaintiff to use the First Revised Methodology because even though Defendants had failed to timely produce documents, Plaintiff had been on notice for months that Defendants' records were inaccurate and could not be relied on. (Doc. 171.) At the time of that ruling, however, Plaintiff had just received full discovery from Defendants and had not yet reviewed the responses. (Doc. 199 at 6.) Because of this delay, the Court permitted Plaintiff to serve a MIDP supplement pertaining only to the new documents and to renew his request to revise the damages methodology only if the newly produced documents supported such a request. (Doc. 199 at 7.)

Pursuant to the Court's order, Plaintiff has once again requested to revise his

damages methodology. (Doc. 222.) This time, Plaintiff seeks to rely more heavily on Defendants' records than in the First Revised Methodology. This new methodology ("Second Revised Methodology") also relies on representative employee testimony to determine an average number of weekly overtime hours but instead uses the Arizona minimum wage alone to determine the proper overtime premium. (Doc. 222-2 at 12.) Moreover, instead of extrapolating the overtime payments due over the average number of weeks worked by employees, Plaintiff now proposes to award the overtime premium only for those weeks an employee is documented to have worked. (Doc. 149-1 at 17–19); (Doc. 222-2 at 12.) But Plaintiff has failed to adequately show that his newfound reliance on Defendants' records was caused by the newly produced documents. Even assuming that Plaintiff learned for the first time by reviewing the newly produced documents that Defendants had been compensating multiple employees through one non-payroll check, he fails to explain how this new fact affects the damages methodology. (Doc. 222 at 3–4.) The Court has already found that Plaintiff knew, well before the deadline, that Defendants' records were unreliable and that he could therefore not rely on them to accurately calculate the total gross wages paid. (Doc. 171.) The Court fails to see why further indications of Defendants' inaccurate records support an even *heavier* reliance on those records: the fundamental difference between the First and Second Revised Methodologies is that the First relies on averages, not Defendants' records, but the Second relies solely on Defendants' records to determine weeks in which an individual employee worked. Although the Court does not wish to reward Defendants' deficient keeping of records and dilatory production, Plaintiff must still demonstrate good cause to modify the scheduling order so long after the deadline has passed; no such good cause has been shown. Plaintiff's Motion is denied.

**III. Attorneys' Fees**

Plaintiff next asks the Court to determine an appropriate amount of attorneys' fees and investigative costs as granted by the Court's prior order. (Doc. 242.) "The starting point for determining reasonable attorneys' fees is the 'lodestar,' which is calculated by

multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate." *Vieste, LLC v. Hill Redwood Dev.*, No. C–09–04024 JSW (DMR), 2011 WL 588145, at *4 (N.D. Cal. Feb. 10, 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended. Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986) (citation omitted).

The Court specifically limited Plaintiff's fee award to attorneys' fees incurred because of Defendants' contempt as well as investigative costs for Saturday surveillance and review of employee timesheets to support the Motion for Civil Contempt Sanctions. (Doc. 242 at 22–23.) Pursuant to those limitations, Plaintiff requests compensation for 310.75 hours of total time, amounting to $47,966.56: $20,225 for investigative costs, $616.56 in mileage reimbursements, and $27,125 in attorneys' fees.[6] (Doc. 246.) Defendant objects to both the total hours expended and the investigators' hourly rate. (Doc. 251.)

**A. Reasonable Rates**

To determine a reasonable hourly rate, "the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010).

---

[6] The parties provided an Excel spreadsheet with Plaintiff's time entries and Defendants' objections. The Court factual findings are based on the Excel spreadsheet unless otherwise noted.

Defendants object to the investigators' hourly rate of $100 per hour.[7] (Doc. 251 at 5–6.) Although Plaintiff argues that the hourly rate should be that of paralegals, the Court has found only one case in which a court approved such a comparison. *Trotter v. Columbia Sussex Corp.*, No. 08–0412–WS–M, 2010 WL 383622, at *11 (S.D. Ala. Jan. 29, 2010). The rates of private investigators are a more apt comparison. Even so, however, courts have found rates as high as $150 per hour to be reasonable. *BBY Sols., Inc. v. Livingstone*, No. 3:15–cv–1001–J–32JRK, 2016 WL 7668486, at *7 (M.D. Fla. Apr. 20, 2016) ($150 hourly rate reasonable); *Trotter*, 2010 WL 383622, at *11 ($55 hourly rate reasonable in 2007). In this case, the investigators' actual hourly wage—what Plaintiff paid the investigators, inclusive of benefits—amounts to approximately $65 per hour.[8] But this rate does not include the other costs incurred as part of Plaintiff's surveillance, including the costs of equipment, support staff, and office space, that would normally be passed on to a paying client; thus, the actual cost incurred is much higher. Moreover, all three of Plaintiff's investigators have at least five years of experience and successfully identified multiple violations of the preliminary injunction in support of Plaintiff's Motion. (Doc. 246-3 at 2); (Doc. 246-5 at 2); (Doc. 246-7 at 2.) The Court therefore finds that in light of the rates other courts have found to be reasonable, the overhead costs that are not reflected in the investigators' salaries, and the skill and experience of the investigators, $100 per hour is a reasonable rate.

## B. Reasonable Hours

The Court next considers the hours expended to assess their reasonableness. The Court "has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, [an appellate court] will defer to its determination . . . regarding the reasonableness of the hours claimed by the [movant]." *Prison Legal News*, 608 F.3d at 453 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)). In reviewing the

---

[7] Defendants do not appear to object to counsel's hourly rate of $250 per hour. Given counsel's credentials and what other courts have found to be reasonable, the Court likewise finds that $250 per hour is reasonable for attorneys Tara Stearns and Adriana Ahumada.
[8] The compensation rate differs for different investigators, but the Court believes $65 to be a reasonable approximation.

- 10 -

hours claimed, the Court may exclude hours related to overstaffing, duplication, and excessiveness, or that are otherwise unnecessary. *See, e.g.*, *Hensley*, 461 U.S. at 433; *see also Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1191 (C.D. Cal. 2009) (stating that "the Court must eliminate from the lodestar time that was unreasonably, unnecessarily, or inefficiently" spent).

Defendants object to Plaintiff's hours as being (1) unreliable; (2) "block billed"; and (3) outside the scope of the Court's order. (Doc. 251 at 3–5.)

### 1. Unreliability

Defendants first argue that Plaintiff's hours are unreliable because counsel and the investigators did not contemporaneously document their time. (Doc. 251 at 3.) "In the absence of contemporaneous records, reconstruction may be used as a basis for an award of attorney's fees." *Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 864 (N.D. Cal. 1986), *aff'd*, 860 F.2d 1514 (9th Cir. 1988). Although the "lack of contemporaneous records does not justify an automatic reduction in the hours claimed," such hours should only be counted "if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation." *Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989).

Counsel for Plaintiff both attest that they worked on the Motion for Civil Contempt Sanctions for several months, which encompassed hundreds of hours. (Docs. 246-1, 246-9.) Though both likely did not record hours contemporaneously—as is common for government attorneys—this does not bar recovery. *See Sec. & Exch. Comm'n v. Sethi Petroleum LLC*, No. 4:15-CV-00338, 2017 WL 262071, at *2 (E.D. Tex. Jan. 19, 2017) ("Government attorneys . . . are not normally expected to record their hours, as they do not normally litigate in fee-generating situations." (quoting *EEOC v. Local 638 & Local 28 of the Sheet Metal Workers' Int'l Ass'n*, No. 71 Civ. 2877 (RLC), 1991 WL 278917, at *2 (S.D.N.Y. Dec. 18, 1991))). The Court reviewed the time entries for both Ms. Stearns and Ms. Ahumada and finds that 97.5 hours is reasonable when considered in light of the non-

contemporaneous entries and block billing, considered separately below.[9] Because the Court could ascertain reasonableness based on review of the time entries, no global reduction will be given.

Similarly, the Court considered the time entries of the investigators. As above, the records are supported by the investigators' declarations, (Docs. 246-3, 246-5, 246-7), and the Court could ascertain reasonableness based upon Jorge Jamail-Gutierrez's and Becky Benitez's individual time entries. Therefore, no global reduction is warranted for those entries. The Court could not, however, determine reasonableness based on Mark DeBauge's time entries. Plaintiff provided no information as to the distances between the various sites, nor did he give an indication as to how Mr. DeBauge was able to recreate his time spent at various sites, such as testimony that he regularly spent a certain amount of time at a jobsite before moving to the next one. The Court will reduce Mr. DeBauge's time by 10% because of the unreliability of his time entries.

### 2. Block Billing

Defendants also object to Plaintiff's block billing. (Doc. 251 at 4.) Many courts have noted that block billing "mak[es] it nearly impossible . . . to identify the specific time spent on discrete tasks in order to determine if [the] time was reasonable." *Notorious B.I.G. LLC v. Yes. Snowboards*, No. CV 19-1946-JAK (KSx), 2021 WL 6752168, at *8 (C.D. Cal. Dec. 22, 2021); *Mfg. Automation & Software Sys., Inc. v. Hughes*, No. CV 16-8962 CAS (KSx), 2018 WL 5914235, at *5 (C.D. Cal. Sept. 18, 2018); *Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1030 (C.D. Cal. 2012). However, to the extent the Court can "determine that all of the tasks described in the entry fell within the scope of work caused by" the defendants' misconduct, and the total time expended is reasonable in light of the tasks described, the Court will not apply a reduction. *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13–cv–02219–HSG (DMR), 2015 WL 3453459, at *2 (N.D. Cal. May 29, 2015); *see also Glodney v. Traveler's Com. Ins. Co.*, No. 2:19-cv-10503-GW-MAA, 2020 WL 8414988, at *23 (C.D. Cal. Sept. 30, 2020).

---

[9] The Court reduced counsel's time entries for 10/05, 12/23, 01/07, 03/07, 03/08, 03/11, 03/26, and 03/28.

Here, the Court determined that Ms. Stearns's, Ms. Ahumada's,[10] Mr. Jamail-Gutierrez's, and Ms. Benitez's block billing could be accounted for by reducing the individual time entries that contained irrelevant tasks. This analysis is further explained below. Again, however, the Court could not determine whether Mr. DeBauge's time entries were inflated because of block billing. Without more support for how long Mr. DeBauge surveilled or how he was able to reconstruct his time, the Court cannot determine reasonableness. The Court will apply another 10% reduction to Mr. DeBauge's time.

### 3. Outside of the Scope of the Order

Defendants finally object to several time entries because they are outside the scope of the Court's order. (Doc. 251 at 4–5.) The Court's sanctions order limited recoverable investigative costs to "Saturday surveillance and time spent reviewing the timesheets to identify evidence in support of the Motion." (Doc. 242 at 22.) First, Defendants object to Ms. Benitez's travel time to and from Valley Wide's office to review the timesheets. (Doc. 251 at 4–5. Second, they object to the time Ms. Benitez spent on administrative tasks. (Doc. 251 at 5.) And third, they object to Mr. DeBauge's time performing Saturday surveillance on days that did not yield any violations of the preliminary injunction. (Doc. 251 at 5.)

Ms. Benitez's travel time is compensable because Defendants refused to provide the timesheets in an electronic format. Although Defendants' refusal to do so was permissible under Federal Rule of Civil Procedure 34, it does not absolve Defendants of their responsibility to reimburse Plaintiff's costs incurred in investigating Defendants' multiple violations of the preliminary injunction. (Doc. 242.) And even if Defendants' refusal was permissible, that does not undermine the fact that their choice increased Plaintiff's costs. Ms. Benitez's travel time was necessary for her to review the timesheets, which was necessary for her to identify evidence in support of the Motion. It is therefore compensable.

---

[10] Counsel's time entries contained all relevant tasks. The Court therefore determined reductions for block billing based on the overall reasonableness of the total time spent in light of the tasks described. The affected time entries are listed above. *See supra* note 9.

The Court agrees that some of the time Ms. Benitez spent on administrative tasks is not compensable. These tasks include "upload[ng] & download[ing] docs; organiz[ing and] convert[ing] to PDF files; bates stamp." This does not include, and is not related to, time spent reviewing the timesheets. The Court therefore reduced time entries including these irrelevant tasks to account both for the block billing and for the irrelevant tasks.[11]

Finally, Mr. DeBauge's Saturday surveillance is compensable. The Court did not place limitations on which Saturdays Plaintiff could recover for. Even if Mr. DeBauge did not uncover violations every Saturday he surveilled, Defendants' conduct gave Mr. DeBauge adequate justification for extensive Saturday surveillance: the vast majority of Defendants' violations occurred on Saturdays. (Doc. 242 at 8–9.) No further reductions are warranted for Mr. DeBauge's time.

After accounting for the above reductions, and after making reductions as needed in response to Defendants' objections to individual time entries,[12] the Court finds that 144.6 hours of investigative time is reasonable.

**C. The Lodestar**

After applying the reductions above, the lodestar is as follows:

Attorneys' Fees: 97.5 hours x $250 = $24,375

Investigative Costs: 144.6 hours x $100 = $14,460

Mileage Costs: $616.56

**Total: $39,451.56**

The Court finds no reason to depart from the lodestar. Accordingly, Defendants shall pay Plaintiff $39,451.56 in reasonable attorneys' fees and investigative costs within thirty days from the date of this Order. Any further fee award, as authorized by the Court's prior Order (Doc. 242), shall be made on separate application.[13]

---

[11] For these reasons, the Court reduced time entries for these dates: 07/21, 08/25, 09/01, 11/04, 11/10, 11/18, 12/17, 01/06, 01/11, 02/09, 02/16, 02/25, 03/02, and 03/10.

[12] The Court reduced Ms. Benitez's time entries for these dates because of duplicity, vagueness, or reasonableness: 07/21, 08/26, 09/01, 09/02, 11/04, 11/05, 11/08, 11/09, 11/10, 11/15, 11/18, 11/19, 12/17, 02/14, 02/28, 03/01, 03/02, 03/08, 03/10, and 03/11.

[13] The Court authorized Plaintiff to seek fees for his "time spent educating [Valley Wide]

**CONCLUSION**

Plaintiff may amend Exhibit A, but the Court will not allow Plaintiff to revise his damages methodology at this time. The Court awards $39,451.56 in attorneys' fees and investigative costs as a remedial sanction, as explained in the Court's prior order (Doc. 242).

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Amend Exhibit A (Third Request) (Doc. 219) is **GRANTED**. Plaintiff shall file an amended Exhibit A within fourteen days from the date of this Order. The Court will not allow Plaintiff to revise his damages methodology at this time.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Modify the Scheduling Order to Allow the Secretary to Revise Damages Computations (Doc. 222) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Application for Attorneys' Fees and Investigative Costs (Doc. 246) is **GRANTED** in part and **DENIED** in part. Defendants shall pay $39,451.56 in reasonable attorneys' fees and investigative costs to Plaintiff within thirty days from the date of this Order.

Dated this 1st day of July, 2022.

_____
G. Murray Snow
Chief United States District Judge

---

employees on the timekeeping requirements of the FLSA." (Doc. 242 at 22–23.) Such fees were not sought and were therefore not considered in conjunction with this Order.